UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAGALY CAMACHO et al.

    Plaintiffs,

v.

WILLIAM FRANCIS GALVIN,
in his official capacity as Secretary of the
Commonwealth of Massachusetts,

    Defendant.

Civil Action No. 02-10428-DPW

## OPPOSITION TO DEFENDANT'S "MOTION TO STRIKE"

Plaintiffs hereby oppose Defendant's so-called "Motion to Strike," which requests that every single one of the evidentiary submissions made in opposition to Defendant's Motion for Summary Judgment be stricken. The Motion should be denied because it (1) rests entirely on the assumption that Plaintiffs were required to accept, in making their evidentiary response to the summary judgment motion, Defendant's erroneous interpretations of section 2 of the Voting Rights Act and the standard for success on a claim of intentional vote discrimination under the Fourteenth Amendment, (2) devotes barely any specific argument (or, in some cases, none) to striking any of Plaintiffs' evidentiary submissions, and (3) transparently attempts to broaden the theory underlying Defendant's summary judgment motion on the morning of the day it was heard. Indeed, the "Motion to Strike," which invites the Court to disregard the opinions of Plaintiffs' experts on the grounds that they are "equivocal," "questionable," or "uncertain," exposes Defendant's summary judgment motion as dependent upon the Court's resolution of

disputed and material factual issues of record before trial. The "Motion to Strike" should be denied on the following grounds:

1. The Motion depends wholly upon an indefensible premise: that a party opposing a summary judgment motion can do so only with evidence relevant under the movant's view of the substantive law, no matter how mistaken. The issue, as framed by Defendant's original moving papers, is indeed a narrow one—whether the fact that Latinos do not comprise more than fifty percent of Plaintiffs' proposed Second Suffolk District is fatal to their claims under both section 2 of the Voting Rights Act and the Fourteenth Amendment. This issue resolves in Plaintiffs' favor for the three independent reasons set forth in their opposition: (i) given the Plaintiffs' charge that the Redistricting Act was enacted with discriminatory intent, and given the evidence that the Act has a dilutive effect upon Latino voting strength, summary judgment cannot enter on either of their claims, (ii) when understood properly, Thornburg v. Gingles, 478 U.S. 30 (1986), does not require the plaintiff minority group to constitute fifty percent—or any "magic number"—of the citizenship voting age population of a single-member district; all that is required is proof that the minority is sufficiently numerous to elect its candidate of choice in the district, and (iii) imposing a citizenship test on a minority group seeking the protection of the Voting Rights Act is inconsistent with its purposes, at least in the face of evidence that the same kinds of discrimination acting to depress minority political participation also acts to depress minority naturalization. With their opposition, Plaintiffs simply submitted proof sufficient to sustain each of these theories for purposes of defeating summary judgment. That these theories do not comport with Defendant's narrow view of the law provides no basis whatsoever for striking that proof.

GSDOCS-1249893-1

2. Specifically, each of the evidentiary submissions which accompanied Plaintiffs' opposition supports their right to recover under section 2 of the Voting Rights Act or the Fourteenth Amendment as follows:

a. **Affidavit of Richard L. Engstrom, Ph.D.**: Professor Engstrom's Affidavit demonstrates that (1) Latinos in Chelsea demonstrate a preference for representation by Latino candidates, not shared by the overwhelmingly white population of Charlestown, and (2) a Latino candidate of choice would likely win a majority of the votes in Plaintiffs' proposed district, but would not do so in the Second Suffolk as constituted by the Voting Rights Act. In support of striking this evidence, Defendant offers two arguments: first, that this proof is somehow inconsistent with the assertions in the Substituted First Amended Complaint, and, second, that—while the evidence might allow Plaintiffs to survive summary judgment as to the first Gingles precondition—it necessarily means that they cannot prove the third Gingles precondition. The first argument is belied by the plain language of the Complaint itself, which alleges exactly what Plaintiffs argued in opposing the summary judgment motion—that the Second Suffolk can be reconstituted in a way which gives Latinos the "opportunity to elect a candidate in keeping with their electoral preferences." Subst. First Am. Compl. ¶ 22. The second argument depends on the proposition (which finds no support in either Gingles or its progeny) that any electoral success by a minority candidate of choice in the challenged district necessarily means there is no legally significant

racial bloc voting.[1] Not only does this argument ignore the multitude of factors, other than white support, which enable a group of Latino voters to elect their candidate of choice without being a majority (e.g., higher voter turnout among the minority than the majority for a particular election, a division of the white vote among two or more white candidates) but it in no way touches upon the relevance of Professor Engstrom's Affidavit.[2] Indeed, much of the "Motion to Strike" is devoted to attacking the legitimacy of his opinions, arguing that they should be disbelieved, rather than disregarded. The Motion, which improperly asks the Court to resolve factual disputes upon a summary judgment, should be denied.

b. **Declaration of Thomas E. Patterson**: Professor Patterson opines that experiences of discrimination reduce the inclination of Latino non-citizens to naturalize and otherwise hinder their pursuit of citizenship, supporting Plaintiffs' argument that making Latinos pass a citizenship test to prevail under the Voting Rights Act is inappropriate. Rather than addressing this connection in any way, Defendant attacks the legitimacy of this conclusion. Again, resolving the truth of an expert's opinion (which, it should be noted, is well-supported by the numerous sources on which Professor Patterson relies) is an inappropriate exercise in deciding a summary judgment motion. The Motion to Strike does not even

---

[1] In fact, this argument has been rejected in at least one circuit. See Old Person v. Cooney, 230 F.3d 1113, 1122 (9th Cir. 2000) (holding that white bloc voting is not "washed clean" by minority electoral success in a majority-minority district). The Old Person court also refused to adopt any bright-line test for the degree of racial bloc voting necessary to satisfy the third Gingles' precondition, relying on Supreme Court guidance that "'the degree of racial bloc voting that is cognizable as an element of a § 2 vote dilution claim will vary according to a variety of factual circumstances.'" Id. at 1128 (quoting Gingles, 478 U.S. at 58).
[2] Even if Defendant's argument as to Plaintiffs' section 2 claims were correct, the Engstrom Affidavit would nevertheless be relevant to the intentional discrimination claim, since it shows that the Redistricting Act has had a dilutive effect upon Latino voting strength in the Second Suffolk.

-4-

purport to argue that the Patterson Affidavit is irrelevant or otherwise inadmissible, and should therefore be denied.[3]

c. **Affidavit of Professor John Harmon**: Contrary to Defendant's own expert, who puts the Latino citizenship voting age population of the proposed Second Suffolk at 31.85 percent, Professor Harmon arrives at a number between 26 and 45 percent. He also testifies that Latinos constitute a majority of the voting age population of the proposed district, and to a number of facts about the existing Second Suffolk which Defendant has chosen to ignore—that the Redistricting Act took two precincts with a Latino population of more than 40 percent out of the district, for example. Defendant's halfhearted assertion that the Harmon Affidavit "fail[s] to present any facts material to this issue" is simply wrong, because (at the very least) it supplies evidence of the intent to dilute Latino voting strength which lies behind the Redistricting Act, as well as differs from the conclusions of Defendant's expert.

d. **Declaration of Carol Hardy-Fanta, Ph.D.**: Following the pattern of improper argument which permeates the Motion to Strike, Defendant attacks Professor Hardy-Fanta's opinions as "extremely questionable," primarily because they purportedly differ from those of Defendant's own reputed expert in this area. Again, this argument simply presents highly charged characterizations of the

---

[3] Plaintiffs believe it unnecessary to address the Defendant's meaningless argument that Professor Patterson's opinions should be stricken because they "simply repeat the findings made in the Senate Report accompanying the Voting Rights Act," which is a mischaracterization, in any event.

GSDOCS-1249893-1

opinions of one of Plaintiffs' experts; it offers no basis for striking them from the summary judgment record.[4] The Motion should be denied.

e. **Affidavit of Juan Vega**: Defendant dismisses the Affidavit of Mr. Vega—one of the plaintiffs in this case, and the sole Latino member of the Chelsea City Council for nearly a decade—as irrelevant, but see note 3, supra, and "contain[ing] multiple levels of hearsay." Even if Mr. Vega's reports of what Latino voters told him immediately upon exiting polling places were not admissible under the "excited utterance" exception to the hearsay rule, his Affidavit nevertheless sets forth other facts based entirely on personal knowledge, e.g., that only one Latino has ever been elected to the Chelsea School Committee, although the majority of children in the Chelsea public schools are Latino. Accordingly, the Motion to Strike should be denied.

3. As to the remaining evidentiary submissions, i.e., the Affidavit of Kenneth A. Sansone, Esq., which attaches excerpts and exhibits from the depositions of four of Defendant's witnesses, and the Declaration of John R. Logan, Defendant offers no argument whatsoever, beyond the conclusory (and erroneous, see ¶ 2, supra) assertion that they are "only relevant to the totality of the circumstances inquiry." Mot. at 10. "In order for the court to consider a motion to strike, the moving party must be specific in its request, directing the court to the particular submission the party wants stricken and setting forth the reasons for the court to take such action." 11 Moore's Federal Practice § 56.14[4][a] (3d ed. 2000); see also Perez v. Volvo Car Corp., 247 F.3d 303, 314 (1st Cir.

---

[4] To the extent Defendant argues that Professor Hardy-Fanta's opinions are irrelevant to the issues on summary judgment, that argument should be rejected: she concludes that Latinos suffer from discrimination affecting their ability to participate in the political process—the same kind of discrimination which Professor Patterson concludes has the effect of depressing Latino rates of naturalization.

-6-

GSDOCS-1249893-1

2001) (holding that, to strike allegedly deficient affidavit, party must "spell out the nature of the ostensible defects clearly and distinctly"). The Motion should be denied, without further analysis as to the Sansone Affidavit and the Logan Declaration, for failing to provide the Court with any specific basis for the relief sought.

4.  That the "Motion to Strike" fails to articulate a basis for striking Plaintiffs' evidentiary submissions is hardly surprising, of course, since the Motion's actual purpose is to broaden the challenge to Plaintiffs' proof far beyond the attack originally mounted in the summary judgment motion. Most egregiously, Defendant argues in the Motion to Strike that Plaintiffs have failed to present a genuine issue of material fact as to the discriminatory intent behind the Redistricting Act sufficient to defeat summary judgment, while in his moving papers he had taken the position that any discriminatory intent did not matter in light of Plaintiffs' alleged inability to meet the first Gingles precondition. Compare Mot. to Strike at 13, n. 15 with Mem. Law Supp. Summ. Judg. at 15. Aside from the unfairness to Plaintiffs in Defendant's completely changing his theory of summary judgment on, literally, the morning of the motion hearing, the theory should be rejected because (1) Plaintiffs have diligently pursued, but have yet to receive, any discovery whatsoever concerning the development of the Redistricting Act, making summary judgment on the issue of legislative intent inappropriate, see Fed. R. Civ. P. 56(f), and (2) despite Defendant's refusal to provide this discovery, Plaintiffs have come forward with circumstantial evidence of the discriminatory intent behind the Act

sufficient to defeat summary judgment.[5] See Pls. Mem. Law Opp. Summ. Judg. at 6-8. Defendant is in no way entitled to summary judgment on that basis.

WHEREFORE, Defendant's "Motion to Strike" should be denied in its entirety.

MAGALY CAMACHO, et al.,

By their attorneys,

Rudolph F. Pierce (BBO #399380)
Kenneth A. Sansone (BBO #647457)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
(617) 482-1776

Nadine Cohen (BBO #090040)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
294 Washington Street
Boston, MA 02108

OF COUNSEL:
Brenda Wright
NATIONAL VOTING RIGHTS INSTITUTE
27 School Street, Suite 500
Boston, MA 02108

Dated: June 14, 2003

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 6/16/03.

---

[5] Indeed, the First Circuit "has consistently held that determinations of motive and intent, particularly in discrimination cases, are questions better suited for the [finder of fact], as 'proof is generally based on inferences that must be drawn, rather than on the proverbial smoking gun.'" Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990) (quoting Rossy v. Roche Prods., Inc., 880 F.2d 621, 624 (1st Cir. 1989)).

-8-



WRITER'S INFORMATION
ksansone@goulstonstorrs.com
(617) 574-4177 Tel
(617) 574-4112 Fax

June 16, 2003

**BY HAND**

Clerk's Office, Civil
United States District Court
District of Massachusetts
United States Courthouse
1 Courthouse Way
Boston, MA 02110

    Re:   *Magaly Camacho et al. v. William Francis Galvin*,
           U.S.D.C., D. Mass., Civil Action No. 2002-10428-DPW

Dear Sir or Madam:

Enclosed for filing in the above-referenced matter please find plaintiffs' Opposition to Defendant's "Motion to Strike."

Thank you for your assistance. Please call me with any questions.

                            Very Truly Yours,

                            Kenneth A. Sansone

KAS
Enclosure

cc:     The Hon. Bruce M. Selya w/enclosure (BY E-MAIL ONLY)
        The Hon. Michael A. Ponsor w/enclosure (BY E-MAIL AND OVERNIGHT MAIL)
        Ms. Rebecca Greenberg (BY HAND)
        Steven P. Perlmutter, Esq. w/enclosure (BY E-MAIL and HAND DELIVERY)
        Richard W. Benka, Esq. w/enclosure (BY E-MAIL and REGULAR MAIL)
        Nadine Cohen, Esq. w/enclosure (BY E-MAIL and REGULAR MAIL)
        Brenda Wright, Esq. w/enclosure (BY E-MAIL and REGULAR MAIL)
        Burton A. Nadler, Esq. w/enclosure (BY E-MAIL and REGULAR MAIL)
        Mitchell V. Matorin, Esq. w/enclosure (BY E-MAIL ONLY)
        Anne Sterman, Esq. w/enclosure (BY E-MAIL ONLY)
        Rudolph F. Pierce, Esq. w/enclosure
        Neil V. McKittrick, Esq. w/enclosure

GSDOCS-1243213-1

Goulston & Storrs, A Professional Corporation • Boston • DC • London*
400 Atlantic Avenue • Boston, Massachusetts 02110-3333 • 617.482.1776 Tel • 617.574.4112 Fax • www.goulstonstorrs.com
*A Subsidiary of Goulston & Storrs, PC